Ruffin, C. J.
 

 The answer of the witness is not set forth in the bill of exceptions, so as to show it to have been to
 
 *153
 
 the prejudice of the prisoner; which must always be done to entitle the party to a
 
 venire de novo.
 
 It has been often said in the Court, that every thing is to be presumed right» unless he, who alleges error, show some one in particular. It is obvious, that it is not competent to the Court here to go out of the record for the affirmative presumption, that this witness replied, that from the evidence he could form an opinion, as a matter of science, and, further, that his opinion was, that the skin was cut with a knife and not torn. Such a power, like that of going out of the record upon a motion in arrest of judgment for other facts, would be most dangerous. The principle upon which a Court of error must of necessity act in our judicature, is, that verdicts and judgments must stand, unless he, who impeaches them, distinctly show an error to his prejudice, either in his exception or in the record. Tn order to obtain a
 
 venire de novo
 
 for the admission of improper evidence, it does not suffice to state matter rendering it probable that such evidence may have been received, but it is indispensable to state the evidence itself. For, in that way only can it be seen, that the evidence was, in itself, really illegal, or that it might have been to the prejudice of the appellant. On this ground the judgment would be left unreversed, even if it were erroneous to admit the evidence, assuming it to have been adverse to the prisoner; for, though a matter of extreme regret in such a case and upon that assumption, it is better to submit to that evil, than that the Court should usurp the authority of presuming facts not appearing in the record.
 

 Upon the question of evidence, however, the Court is of opinion, that such answers from the witness, as those supposed, are proper for the consideration of the j ury. Authorities need not be adduced to show, that it is an established rule in the law of evidence, that, in matters of art and science, the opinions of experts are evidence, touching questions in' that particular art or science. The rule is founded in necessity; because persons of ordinary avocations, including-
 
 *154
 
 jurors and judges, áre not generally capable of judging correctly upon many questions, which must be determined in order to the decision of a legal controversy, and which depend on scientific knowledge or skill in art. Resort is then .had to the information of those, who made it or are supposed to have made it the business of their lives to study the principles of that science or art and carry them out into practice. The information derived from them may not lead, in the minds of those constituting the tribunal, to certain and satisfactory conclusions, and, indeed, is often unsatisfactory, especially when opposing opinions’are delivered by different professors. Yet, from necessity, they must be received, because those opinions are the best accessible evidence on the matters in issue ; and when received, their weight must depend on the impression made thereby on those, who hear them. In reference to questions involved in controversies like the present, namely, as to the nature and effect of a wound described to a witness, it certainly is to a considerable extent a matter of science to be able to judge of them correctly. Whether a wound was made by a shot or a sword or other sharp instrument, can, beyond all doubt, be better judged of by one,, who has habitually examined and treated wounds of such kind, as, for example, an old surgeon in the army, than by one without experience or scientific theory, whatever may be the degree of his general intelligence on other subjects. So, surgeons familiar with fields of battle, and the appearance of dead bodies lying there long without burial, may be competent at the distance ofthree months not only to distinguish what kind of wound caused the death, but also to distinguish wounds made on the body before or at the death from lacerations of the dead body by the tearing or crushing of wild beasts or ■other brutes. At all events, wlien professors of the science swear they can thus distinguish, it would be taking too much qu themselves for persons, who, like Judges, are not adepts,
 
 to
 
 say, the witness cannot thus distinguish, and on that
 
 *155
 
 ground refuse to hear his opinions at all. By such a course the Judge would undertake, of his own sufficiency, to determine how far a particular science, not possessed by him( can carry human knowledge, and to determine it in opposition to the professors of that science. That course would subvert the principle, on which the rule of evidence is founded and exclude the evidence in all cases; since, in truth, its utility depends on having the aid of men of science at that point, at which it is necessary to supply the deficiency in the knowledge of those who are not experts. Indeed, that was the aspect in which the case was pressed in the argument of the prisoner’s counsel — insisting that the, opinions of medical men were entitled to little or no confidence and ought not to be received, and laying little stress on the particular circumstance, that the witness said he had not seen or read a case, in which the body had been exposed for “ three months,” as here. That circumstance, indeed, does not touch the question of competency, though it may lessen the credit given to the testimony. As just noted, it is the point for the man of science to consider, whether in a particular state of facts he can or cannot form a sound opin ion, which would satisfy his own judgment as to the matter of fact. In the next place, if it were the office of the Court to determine, whether the circumstances were or were not sufficient to enable the witness to form such an opinion, it could not be held, they were insufficient here, merely because exactly such a cause as this had not before fallen under the observation of the witness o.r under his notice in the course of his reading. For, the man of science is distinguished from an empiric in nothing more, than in not relying on specifics and also not waiting for exact similitudes in things material and immaterial, before forming a judgment, whether two patients are laboring under diseases of the same character and requiring the like treatment. It is the province of science to discover general principles from long and? accurate observation and sound reasoning ; and it must be'
 
 *156
 
 sufficient to induce Courts of justice to receive assistance from men of science in making their investigations, when assured by them, that the principles of their science, applicable to a particular subject of enquiry, established certain results, even though the witness may not have seen or read of a case in all its particulars like that under consideration. Those results may often surprise, and, indeed, some of them are strange enough to, uninitiated minds. Yet, unless the rule be abrogated, they must be heard and left to be combat-ted before the jury by the better opinions of abler experts, or by the sound sense and observation of the jurors themselves. In fine, this matter went to the weight due to the opinions of the witness, rather than their competency- — supposing that, in point of fact, he did deliver the opinions imputed to him in the argument, though not expressed in the exception. It must, therefore, be certified to the Superior Court, that there is no error.
 

 Per Curiam. Ordered to be certified accordingly.